**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JILL FITZER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No. _______** |
| | ) | |
| **MOSHY GAMING, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## STATEWIDE CLASS ACTION COMPLAINT

Plaintiff Jill Fitzer, an adult resident of Franklin County, Ohio, on her own behalf and on behalf of all others similarly situated in the state of Ohio, files this state-wide class action complaint against Moshy Gaming, LLC ("Moshy" or "Defendant.")

## INTRODUCTION

1. This state-wide class action seeks recovery of illegal gambling losses by Ohio residents who played Moshy's illegal online gambling games. Plaintiff seeks, on her own behalf and on behalf of all similarly situated Ohio residents:

(1) a determination that Moshy's games violate federal law, and that Moshy's online terms of service setting out the terms and conditions under which the illegal gambling is conducted are therefore unenforceable in a federal court;

(2) a ruling that the online terms of service, the arbitration provision, and the delegation clause contained therein are each void as violative of Ohio law;

(3) a ruling that defendant's terms of service violate JAMS minimum standards and the effective vindication doctrine by purporting to bar certain statutory rights of customers;

(4) recovery under the Ohio gambling loss recovery act, ORC § 3763.02;

(5) recovery under the Ohio Consumer Sales Practices Act; and

(6) restitution for unjust enrichment.

Plaintiff also seeks on his own behalf losses of Ohio residents pursuant to ORC § 3763.04 which are not recoverable by class members.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff Jill Fitzer is an adult resident citizen of Franklin County, Ohio. He played the illegal gambling games described below in this district and division.

3. Defendant Moshy Gaming, LLC is a business entity organized under the laws of Delaware, with its principal place of business in Wilmington, Delaware. It does business through online gambling games in all counties in Ohio, including Plaintiff's resident county. It does not have a physical place of business in the state of Ohio.

4. The events giving rise to plaintiff's claims occurred in this district and division, such that venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2).

5. Plaintiff, the plaintiff class, and defendants are citizens of different States, and the aggregated amount in controversy in this class action exceeds $ 5 million, exclusive of interest and costs. This Court therefore has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

6. Plaintiff also brings an individual claim with more than $75,000 at issue under ORC § 3763.04. Thus, the Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7. This court has personal jurisdiction over Moshy because the company has sufficient minimum contacts to support specific personal jurisdiction in the state, and those contacts are directly related to Plaintiff's claims. See International Shoe Co. v. Washington, 326 U.S. 310 (1945).

8. Moshy's minimum contacts with the state of Ohio include ongoing contractual relationships created by the terms and conditions on the Defendants' smartphone applications. Moshy required Plaintiff and all other Ohio customers to agree to these terms. Both the Sixth Circuit and the United States Supreme Court, among many others, have found that personal jurisdiction is proper "where a defendant 'has created continuing obligations between himself and the residents of the forum." Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 551 (6th Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

9. Moshy's contacts with Ohio also include direct solicitations and other communications, instituted by the company, with customers in Ohio. These include in-game messages and advertisements sent to players. Further, social and sweeps casino companies specifically target individuals who spend money on the apps, including by sending them direct, targeted advertisements to play the game, purchase coins, or participate in particular features of the games. See "How social casinos leverage

Facebook user data to target vulnerable gamblers," PBS News Hour, available at https://www.pbs.org/newshour/show/how-social-casinos-leverage-facebook-user-data-to-target-vulnerable-gamblers (last accessed July 11, 2025). These communications and advertisements specifically directed by Moshy to particular current and prospective players in Ohio constitute purposeful contacts with the state. Here is an advertisement from Moshy directed at an Alabama Facebook account:



10. Moshy's contacts with Ohio also include the payment of redemptions to people that win on their website Moozi.com. Moozi features a mode, described in detail below, that allows users to play the illegal gambling games for virtual currency that can be redeemed for cash. As demonstrated in the advertisement above, redemption of money won is a selling point that the company focuses on. When players sign up at these websites, before they can redeem any money won, they must provide both an address, including city and state, and bank account information. This information informs Moshy of the state in which each customer lives, and means that when they continue to do business with that customer, accepting purchases and sending redemptions, they are purposely doing business with the state of Ohio. Below is a screenshot of the request for bank information on Moshy's website:



## RELEVANT FACTS

### A. Moshy's Gambling Games

11. Moshy is a game developer that has created online games that simulate slot machines and other gambling games. It provides these games to the public in Ohio at its Moozi.com website.

12. Moshy's games operate with two forms of virtual coins. The first are called gold coins in the industry, and are available for purchase, as well as being given to players when they first sign up and at certain intervals. Gold coins cannot be redeemed for real-world currency. However, when users play with gold coins and win, this extends their playing time without having to purchase more coins.

13. The other virtual coins used by Moshy are called sweeps coins. Moshy maintains that this form of coins cannot be purchased. However, when individuals purchase packages of gold coins, they are "given" a set number of sweeps coins. Below is a screenshot from Moshy's website demonstrating coins are sold in packages containing both gold coins and sweeps coins:



Once purchased, these sweeps coins can be risked on the gambling games for winnings that can be redeemed for real-world currency. Thus, when customers play with them, they are gambling real money, whether the Defendant describes it this way or not.

14. Moshy's games are games of chance. Moshy makes available online games in a variety of formats, including at the Moozi.com website. These sites offer numerous casino-style games, especially slot machine games. Here is an example of one of these games:



15. Plaintiff Jill Fitzer spent money to purchase virtual coins, played Moshy's gambling games, and lost money on the games within the six months preceding the filing of this complaint.

**B. Defendants' Games Have Gravely Harmed the Class and the State of Ohio.**

16. The social ills caused by "social casino" and "sweeps casino" games are well-documented. Media reports how gambling addicts spend enormous, and completely unaffordable, amounts of money on these casino games. One nurse in Houston is reported to play a slot machine game similar to defendants' here for a minimum of two hours a day. (Ex. 1, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on Aug. 19, 2024)). Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (Id.). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (Id.). This is not an isolated instance.

17. NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive

marketing tactics. "Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior." (Id.). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendants'] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said." Such problems are only exacerbated by "sweeps casinos," where users have access to gambling games where they can win cash money, and not just additional play-time, twenty-four hours a day, seven days a week.

18. It is scarcely a defense that "social casino" slot machines do not afford gamblers the opportunity to win real money because the currency in such games consists of "virtual coins" that are only redeemable as additional opportunities to play the games. This is so for at least two reasons. First, those with gambling addictions have been documented to lose thousands of dollars playing these slot machines, to the point of financial ruin and marital strife, even though these gamblers could never win their money back – only the opportunity for additional spins at the slot machine. Second, the law in many states, including Ohio, holds that the opportunity to win additional playing time is a "thing of value" such that gambling for more playing time is illegal gambling even though the gambler never has the opportunity to win his or her money back. Westerhaus Co. v. City of Cincinnati, 135 N.E. 2d 318, 336 (Ohio 1956).

19. Anecdotal reports of gambling addictions in connection with social casino and sweeps casino games like defendants' are buttressed by recent scientific studies that confirm that such apps not only appeal to gambling addicts, but have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead, et al., "Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction?" 46 Journal of Gambling Issues 43 (2021).

20. Companies in the social casino industry, including Defendants, have extracted tens of millions of dollars from Ohio's economy in the last five years, all without adding anything to the economy of the state or paying a dime in taxes to Ohio's treasury. Instead, the money extracted from Ohio's economy ends up in not only in Defendant's home state of Delaware, but also in foreign countries like Australia, Hong Kong, Israel, Gibraltar, Australia, and Cyprus, where other major companies in the industry are headquartered. According to research on the industry as a whole, social casinos and sweeps casinos had estimated 2024 revenues of 7.1 billion and 10.6 billion, respectively. https://kpmg.com/kpmg-us/content/dam/kpmg/pdf/2025/sweepstakes-gaming-emerging-industry-primer.pdf. Even if Ohio consumers represent but a small percentage of that total, the reality is that a great deal of money is being siphoned from the state's economy each year.

## CLASS ALLEGATIONS

21. Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class sought to be certified is defined as follows:

> All Ohio residents who spent money on Moshy's gambling websites (including Moozi.com) within the applicable statute of limitations for each of the class claims set forth below and continuing to a date to be set by the Court following certification. All employees of the Court and plaintiff's counsel, and their families, are excluded.

22. This class action satisfies the numerosity requirement of Rule 23(a)(1) because joinder of all members of the plaintiff class is impracticable. There are thousands of Ohio residents who are members of the class.

23. This class also satisfies the commonality requirement of Rule 23(a)(2) because there are central questions of fact and law that are common to the class. Such common questions include, at a minimum, (a) whether Moozi's games are games of chance; (b) whether free play is a thing of value under Ohio law; (c) whether individuals playing with Sweeps Coins can recover real money (d) whether Moozi's games constitute illegal gambling under Ohio law; (e) whether class members are entitled to recover their losses pursuant to Section 3763.02 of the Ohio Revised Code; (f) whether Moshy represented on its website, in its Terms and Conditions, or in advertisements that its gambling games are legal in Ohio; (g) whether such misrepresentations constitute deceptive trade practices under Ohio law; (h) whether Moshy was unjustly enriched by its illegal activities; (i) whether Moshy's terms of

service are unenforceable under federal law because they set forth the terms and conditions under which illegal gambling under federal law occurs; and (j) whether Moshy's terms of service, and the arbitration agreement contained therein, are each void under Ohio law.

24. The proposed class satisfies the typicality requirement of Rule 23(a)(3) because the named plaintiff's claims are typical of the claims of the class members. Both plaintiff and the class members lost money in an effort to win either money (with Sweeps Coins) or additional playing time (with gold coins) on these illegal gambling games.

25. The named plaintiff will fairly and adequately represent the interests of the class pursuant to Rule 23(a)(4). Plaintiff has no interests that conflict with the interests of the class. Furthermore, plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

26. Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which allows class treatment of a claim where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

27. The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The ***only*** individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining Moshy's own records.

28. Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all.

29. For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

30. It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

31. We foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members

is contained in Moozi's own records concerning users' purchases. Defendants and the platforms they use to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in Ohio, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

**DEFENDANT'S GAMES VIOLATE OHIO AND FEDERAL LAW**

32. Unregulated gambling is illegal in Ohio, and there is a strong public policy against unregulated gambling in this state. The state's strong public policy against gambling includes a statutory right of persons who lose money or other things of value on illegal gambling to recover their money or thing of value.

33. The Ohio criminal laws pertaining to gambling are codified in Chapter 2915 of the Ohio Revised Code. Ohio law prohibits gambling on both "schemes of chance" and "games of chance." Each of these is defined in the code:

> "Scheme of chance" means a slot machine unless authorized under Chapter 3772. of the Revised Code, lottery unless authorized under Chapter 3770. of the Revised Code, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine or a pool not conducted for profit. "Scheme of chance" includes the use of an electronic device to reveal the results of a game entry if valuable consideration is deemed to be paid for a chance to win a prize in the following instances:
>
> (7) A participant may purchase additional game entries by using points or credits won as prizes while using the electronic device.

O.R.C. § 2915.01(C)(7).

> (D) "Game of chance" means poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

O.R.C. § 2915.01(D).

34. The Ohio Revised Code also defines "gambling device" to include "(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance." O.R.C. § 2915.01(F)(3). Most of Moshy's games are nothing more than slot machines, and the outcome of each wager is determined "largely by chance," so Moshy's games are both "games of chance" and a "gambling device" within the meaning of Ohio law.

35. As noted above, valuable consideration is not limited under Ohio law to a situation where one gambles in the hopes of winning actual cash money, as Moshy's customers do when gambling with sweeps coins. Additionally, "valuable consideration" specifically includes "additional game entries by using points or credits won as prizes while using the electronic device." O.R.C. 2915.02(A)(2). Further, the Ohio Supreme Court has explicitly held that "[a]musement is a thing of value" and thus that risking something one purchased to obtain additional amusement is gambling as a matter of law. Westerhaus Co. v. City of Cincinnati, 135 N.E. 2d 318, 336 (Ohio 1956). Thus, both the gold coins and the sweeps coins are things of value under Ohio law.

36. Because the gambling games are illegal in Ohio, when such games are played in Ohio, they are also illegal under federal law pursuant to 18 U.S.C. § 1955, as more fully set forth in Count One below.

## CLAIMS FOR RELIEF

## COUNT ONE: SEEKING A RULING THAT THE GAMBLING ON MOSHY'S SITES IS ILLEGAL UNDER FEDERAL LAW, MAKING DEFENDANT'S TERMS OF SERVICE UNENFORCEABLE IN FEDERAL COURT

37. Plaintiff incorporates the factual and legal averments of Paragraphs 2-36 by reference as if fully set forth in this count.

38. Plaintiff seeks, on behalf of herself and the class, a ruling holding that:

a. Moshy's conduct in Ohio with respect to the games at issue is an "illegal gambling business" under 18 U.S.C. § 1955;

b. The "Terms of Use and Service Agreement" found on Moshy's websites set out the terms and conditions under which Moshy's illegal gambling is conducted; and

c. The agreements at issue are unenforceable in federal court.

39. The relevant language of 18 U.S.C. Section 1955 states:

**(1)**"illegal gambling business" means a gambling business which—

**(i)** is a violation of the law of a State or political subdivision in which it is conducted;

**(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

**(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

28 U.S.C. § 1955(b)(1).

40. As to the first element required to find an illegal gambling business under Section 1955, Moshy's games are in fact illegal gambling under Ohio law, because they consist of contests of chance in which users risk something of value (virtual coins

– whether gold coins or sweeps coins – that they paid real money for) for something else of value (additional amusement if using gold coins, or real money if using sweeps coins).

41. As explained above, Ohio law bans both games of chance and schemes of chance, and Moshy's games fit this definition. See ¶ 33, supra.

42. As to the second element under Section 1955, Moshy certainly employs more than 5 persons who conduct, finance, manage, supervise, direct or own all or part of its business.

43. The third element of Section 1955 is also met. Moshy has both been in business for more than 30 days in Ohio, and has had gross revenue of more than $2000 in a single day. Moshy has conducted business in Ohio for multiple years, and, upon information and belief, has collected gross revenue of more than $2000 in a single day on multiple occasions.

44. Because all three elements of Section 1955 are met, Moshy's conduct in Ohio constitutes an illegal gambling business, and Claimant's first request for a ruling is due to be granted.

45. The second request should also be granted. The "Terms of Service" found on Moshy's websites, do in fact set out the terms and conditions under which the illegal gambling thereon is conducted. Plaintiff expects Moshy will challenge the words "illegal" and "gambling" in this request, but will likely not dispute the fact that its terms of service govern the operation of the games and all of the activity it conducts in Ohio.

46. Because the contract embodied in the terms of service, as described above, is illegal pursuant to federal law, namely 18 U.S.C. § 1955, federal courts, pursuant to United States Supreme Court precedent, are not permitted to enforce the contract in aid of such illegal activity. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 84 (1982), which held:

> It is . . . well established . . . that a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."

(quoting Hurd v. Hodge, 334 U.S. 24, 34-35 (1948)).

47. Under this long-established principle, because defendant's terms are illegal and void in Ohio, this Court cannot enforce the terms to send this case to arbitration.

**COUNT TWO: SEEKING A RULING THAT DEFENDANTS' TERMS OF SERVICE AS A WHOLE AND THE ARBITRATION AND DELEGATION PROVISIONS THEREIN ARE EACH VOID UNDER OHIO LAW**

48. Plaintiff incorporates the factual and legal averments of Paragraphs 2-47 by reference as if fully set forth in this count.

49. As set forth above, defendants' games are governed by terms of service that facilitate the illegal gambling. The terms of service are therefore void pursuant to Section 3763.01 of the Ohio Revised Code, which states that "[a]ll promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when

the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void."

50. The terms found on Moshy's website also contain provisions within the arbitration agreement that exist in aid of the illegal gambling conduct and are thus void and unenforceable. For example, Moshy's terms state that customers may bring claims only in their "individual capacity," and that they may not participate in any "purported class, consolidated, or representative proceeding, or for the benefit or in the place of a non-party." https://www.moozi.com/terms-of-use. This provision is intended to prevent customers bringing claims involving the losses of other parties, as all claims pursuant to Section 3763.04 of the Ohio Revised Code do. Thus, the Terms and Conditions seek to shield Moshy from the consequences of its illegal conduct in Ohio.

51. Moshy's terms also contain a provision stating that its customers "agree that all issues are for the arbitrator to decide, including issues of jurisdiction and arbitrability, and the formation, existence, validity, interpretation, and scope of this dispute resolution and arbitration provision." https://www.moozi.com/terms-of-use. This provision is also in aid of the illegal conduct, and cannot, under United States Supreme Court precedent, take away from the Court the power to determine whether

the contract, including the arbitration and delegation clauses, is void under Ohio law because it is based on a gambling consideration.

52. Plaintiff seeks on his own behalf and on behalf of the class, a determination that Moshy's terms of service, and, separately, the arbitration agreement contained therein, are each void under Ohio law.

## COUNT THREE: SEEKING A RULING THAT DEFENDANT'S TERMS OF SERVICE VIOLATE THE JAMS MINIMUM STANDARDS AND THE EFFECTIVE VINDICATION DOCTRINE

53. Plaintiff incorporates the factual and legal averments of Paragraphs 2-52 by reference as if fully set forth in this count.

54. Plaintiff and the members of the class are ostensibly subject to an arbitration agreement, which, as explained in Count Two, is void under Ohio law. This purported arbitration agreement names Judicial Arbitration and Mediation Services (JAMS) as the arbitration forum.

55. JAMS has promulgated "Minimum Standards for Arbitration Procedures" for use in consumer arbitrations, which are available online at https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025). Principle 3 of these Minimum Standards states that "[r]emedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." https://www.jamsadr.com/consumer-minimum-standards/ (last accessed August 28, 2025).

56. The United States Supreme Court has a held that arbitration agreements written to prevent a party from pursuing statutory remedies are invalid. American Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (citing, inter alia, Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)).

57. The Italian Colors court, while holding that the exception did not apply to the case at bar, stated in strong terms that the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." 570 U.S. at 236.

58. Moshy's Terms of Service contain such provisions, purporting to limit the assertion of statutory rights under Ohio's gambling laws, including O.R.C. § 3763.04, in litigation and arbitration. As noted above, all claims under Section 3763.04 involve the losses of third parties, and Moshy's terms purport to explicitly deprive customers of their rights under this statute. These provisions run directly afoul of the JAMS minimum standards and the effective vindication doctrine set forth by the United States Supreme Court.

59. Plaintiff, on behalf of himself and the class, seeks a determination that provisions in Moshy's Terms of Service that prevent customers from effectively vindicating statutory rights are void and unenforceable.

## COUNT FOUR: CLASS CLAIMS FOR INDIVIDUAL LOSSES

60. Plaintiff incorporates the factual and legal averments of Paragraphs 2-59 by reference as if fully set forth in this count.

61. The Ohio Revised Code provides a statutory civil cause of action to recover money paid and lost due to gambling. Section 3763.02 provides:

> If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner, thereof with costs of suit.

O.R.C. § 3763.02.

62. On behalf of herself and all others similarly situated, Plaintiff Jill Fitzer seeks for each class member recovery of the amount paid through purchases on Moshy's websites within the six months preceding the filing of this complaint minus any amounts that player was actually paid back as a result of winnings, pursuant to Section 3763.02 of the Ohio Revised Code.

## COUNT FIVE: INDIVIDUAL CLAIM FOR THIRD PARTY LOSSES

63. Plaintiff incorporates the factual and legal averments of Paragraphs 2-55 by reference as if fully set forth in this count.

64. After the six-month period during which the losing gambler may recover his or her money, the Ohio Revised Code provides that any person may then sue and recover the losses:

> If a person losing money or thing of value, as provided in section 3763.02 of the Revised Code, within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit.

O.R.C. § 3763.04.

65. Pursuant to Section 3763.04 of the Ohio Revised Code, Jill Fitzer claims, on her own behalf, the total of the net losses by purchases of virtual currency on Moshy's website that occurred more than six months prior to the filing of this complaint that are not, for any reason, recoverable by the class pursuant to counts six and seven.

## COUNT SIX: CLASS CLAIMS FOR VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

66. Plaintiff incorporates the factual and legal averments of Paragraphs 2-65 by reference as if fully set forth in this count.

67. The Ohio Consumer Sales Practices Act, codified in Chapter 1345 of the Ohio Revised Code, forbids companies offering goods or services to the public in the state from committing any "unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02(A).

68. In addition to this general bar on deceptive acts and practices, the statute goes on to expressly forbid a non-exclusive list of representations, including the following:

> (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

> (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not:

O.R.C. § 1345.02(B).

69. Moshy maintains that sweeps coins cannot be purchased, and the Terms and Conditions state that "[o]ccasionally, users who purchase GC [Gold Coins} may also receive complimentary SC [Sweeps Coins]." In reality, as noted above, the coins are sold in packages that contain both Gold Coins and Sweeps Coins.




These packages clearly demonstrate that Sweeps Coins are for sale, because an item does not become unavailable for sale simply because the purchaser has to buy it in combination with another item. Thus, Moshy's representation that Sweeps Coins are not available for sale is patently false.

70. In the Terms and Conditions, Moshy also represents that "Moozi does not offer real money gambling." https://www.moozi.com/terms-of-use. The terms further state that the company does "not endorse or promote illegal gambling activities." Id.

71. The representation that real money gambling is not available and players cannot win real money is patently false. As previously noted, players who play with Sweeps Coins may redeem their winnings for cash. The website explicitly states that "[w]here you elect to redeem prizes for cash, the payment will be made in USD." https://www.moozi.com/sc-coins. In reality, Moshy's site offers illegal gambling, and promotes illegal gambling activity, despite its misrepresentations to the contrary.

72. The Ohio Consumer Sales Practices Act provides a private right of action, allowing consumers to recover money lost to deceptive practices.

73. Pursuant to Section 1345.02(B)(1) and (2) of the Ohio Revised Code, the representations that sweeps coins cannot be purchased, that real money gambling is not available on the sites, and that the gambling games are legal and can be the subject of a binding contract, violate the Consumer Sales Practices Act because they represent that the subject of the consumer transactions at issue have characteristics that they do not and are of a particular standard that they do not possess.

74. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 21-31 above, Plaintiff seeks to recover for the class all money lost by a class of persons who played Moshy's illegal gambling games during the two-year statute of limitations of the Consumer Sales Practices Act.

## COUNT SEVEN: UNJUST ENRICHMENT

75. Plaintiff incorporates the factual and legal averments of Paragraphs 2-74 by reference as if fully set forth in this count.

76. The elements of unjust enrichment in Ohio are "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3) the defendant retained benefit under [unjust] circumstances." Compound Property Management, LLC v. Build Realty, Inc., 343 F.R.D. 378, 412 (S.D. Ohio 2023) (quoting Anderson, Inc. v. Consol, Inc., 458 F.3d 496, 501 (6th Cir. 2003)).

77. Here the first two elements are obvious and will likely be undisputed. Defendants retained a benefit when Plaintiff and the class purchased Gold Coins and Sweeps Coins from Moshy's websites, and the company knew of the existence of their purchases.

78. Because the only purpose of the virtual coins being purchased is to gamble with them on Defendants' illegal gambling games, Defendants' retention of the monies paid in these illegal games constitute unjust circumstances. Thus, the elements of unjust enrichment are met, and the funds that were illegally obtained should be returned to class members.

79. "A six-year statute of limitations applies to unjust enrichment claims in Ohio." Radon Service Agreement Corp. v. Radon Service Agreement, Inc., 2005 WL 2086010 at *2 (S.D. Ohio 2005) (citing Drozeck v. Lawyer's Title Ins. Corp., 749 N.E. 2d 775, 823 (Ohio Ct. App. 2000).

80. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adopting the class allegations found in Paragraphs 21-31 above, Plaintiff seeks to recover all

money lost by a class of persons who played Moshy's illegal gambling games during the six years preceding the filing of the complaint.

## PRAYER FOR RELIEF

Pursuant to the legal and factual averments above, Plaintiff respectfully asks this court to:

1. Take jurisdiction of this cause;
2. Following discovery, certify counts one, two, three, four, six and seven of this complaint as a class action pursuant to Rule 23(b)(3);
3. Appoint the undersigned as Class Counsel and the named plaintiff as class representative;
4. Enter a determination that Moshy's gambling games, when played in Ohio, constitute an "illegal gambling business" under 18 U.S.C. § 1955;
5. Enter a determination that the gambling is conducted pursuant to the terms and conditions on Moshy's website and that these terms are void under Ohio law and cannot be enforced;
6. Enter a final judgment against Moshy awarding plaintiff and the class members a refund of their net losses on Moshy's illegal gambling games in the period between six months prior to the complaint and the entry of judgment under Ohio's gambling loss recovery statute;
7. Enter a final judgment against Moshy awarding plaintiff and the class members a refund of their losses, unrecovered under count four, during the

period between two years prior to the filing of the complaint and the entry of judgment, pursuant to the Ohio Consumer Sales Practices Act;

8. Enter a final judgment against Moshy awarding plaintiff and the class members restitution of all amounts unrecovered under counts four and six, by which Moshy was unjustly enriched during the period between six years prior to the filing of the complaint and the entry of judgment;
9. Enter a final judgment against Moshy awarding to plaintiff the amount of all money lost in Moshy's illegal gambling games by Ohio residents during the period between one year prior to the filing of the complaint and six months prior to the filing of the complaint, to the extent that such losses have not been recovered under counts four, six, and seven;
10. Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgment in favor of the class;
11. Award the named plaintiff a reasonable sum of money for his services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;
12. Award interest and costs; and
13. Award any other relief to which the Court finds plaintiff and the class are entitled.

Respectfully submitted this 20th day of November, 2025.

ROCKWELL LLC

*/s/ Joshua D. Rockwell*
Joshua D. Rockwell (0081107)
47 East Wilson Bridge Road
Worthington, Ohio 43085
PH: (614) 806-7672
jrockwell@lawrockwell.com
*Trial Attorney for Plaintiff*